[No. 22082.   Department One.   January 10, 1930.]

THE STATE OF WASHINGTON, on the Relation of the Department of Public Works, Appellant, v. C. R. HIGGINS et al., Respondents.[1]

The Attorney General, H. C. Brodie, Assistant, and V. D. Bradeson, for appellant.

Lloyd R. Savage, for respondents.

[1]Reported in 283 Pac. 1074.

BEALS, J.—The department of public works of Washington instituted this proceeding by the filing of a petition pursuant to Rem. Comp. Stat., § 10442, alleging that the defendants, ever since on or about May 20, 1928, have been operating as an auto transportation company in the carriage of freight between Seattle and Everett without having first obtained a certificate as required by chapter 111, Laws of 1921, p. 338, as amended and supplemented, and that they would continue so to operate unless restrained by order of court. The department prayed for relief by mandamus or such order as the court might deem appropriate. In response to an order requiring defendants to appear and answer, they filed their answer to the department's petition, in which they denied all the material allegations thereof, admitting only that they were engaged in, and would continue to conduct, the business which they were carrying on.

On the trial of the action, the superior court held that defendants' operations were not of such a nature as to constitute them common carriers, and they therefore did not fall within the purview of the auto transportation act and that they were entitled to carry on their business free from interference or supervision on the part of the department of public works. From a judgment dismissing the department's petition, it appeals.

From the record, it appears that, prior to April, 1928, Bell Auto Freight Company was operating as a carrier of freight between Seattle and Everett under a certificate of public convenience and necessity. Respondents were drivers in the employ of the Bell company, and when, during the month of April, 1928, that company sold its business and all rights owned by it in connection therewith to the Independent Truck Company, respondents commenced operating an automo-

bile truck for the carriage of freight between Seattle and Everett. Respondents initiated this business on or about May 1, 1928, and in the course of a year or so, they added a second small truck to their equipment.

Appellant contends that the evidence introduced before the trial court shows that the character and volume of business carried on by respondents brings them within the purview of the auto transportation act (Rem. Comp. Stat., § 6382 *et seq.*), and that respondents, having no certificate of convenience and necessity, are carrying on their business in violation of law and should be enjoined from so doing.

Respondents, on the other hand, contend that they are not common carriers, and that neither the nature nor the character of their business is such as to bring them within the purview of the auto transportation act.

Section 6387, Rem. Comp. Stat. (Laws of 1921, p. 338, § 1, motor vehicle act), defines an "auto transportation company" as follows:

"The term 'auto transportation company' when used in this act means every corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails used in the business of transporting persons, and, or, property for compensation over any public highway in this state between fixed termini or over a regular route, and not operating exclusively within the incorporated limits of any city or town; . . ."

Section 6388, Rem. Comp. Stat., forbade the operation of any motor propelled vehicle "for the transportation of persons and, or, property, for compensation on any public highway in this state, except in accordance with the provisions of this act." This section, which was § 2 of the original act, was amended

by ch. 166, Laws of 1927, p. 179; Rem. 1927 Sup., § 6390, which reads as follows:

"No corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, shall engage in the business of operating as a common carrier any motor propelled vehicle for the transportation of persons, and/or, property between fixed termini or over a regular route, for compensation on any public highway in this state, except in accordance with the provisions of this act."

In construing § 2 of the original act (Laws of 1921, p. 339; Rem. Comp. Stat., § 6388, *supra*), this court held that the same did not apply to private contracts for hauling freight entered into in good faith. *Carlson v. Cooney,* 123 Wash. 441, 212 Pac. 575; *Davis & Banker v. Metcalf,* 131 Wash. 141, 229 Pac. 2; *Spokane Northwest Auto Freight v. Tedrow,* 144 Wash. 481, 258 Pac. 31. Under these cases construing the prior law, the amendment thereto passed in 1927, above quoted, while including for the first time the words "common carrier," did not materially alter the effect or operation of the law as it stood at the time the amendment was enacted.

In the case of *Cushing v. White,* 101 Wash. 172, 172 Pac. 229, L. R. A. 1918F 463, this court held that persons operating automobiles for hire, whether charging so much per trip or so much per hour, having a usual stand where the machine was available to patrons when not in use, running over no fixed route and carrying only the passenger or passengers who might hire the car for a definite trip or time, having no fixed schedule of rates and maintaining the right to transport passengers or refuse to transport them, whether the car was engaged or not, were still common carriers within the purview of ch. 57, Laws of 1915, p. 227 (Rem. 1915 Code, § 5562-37 *et seq.*). The case of *Ter-*

*minal Taxicab Co. v. Kutz,* 241 U. S. 252, is to the same effect.

■ From the record before us, it appears that respondents maintained no hourly schedule, neither did they maintain any terminus in either of the cities between which they operated their trucks. They did all the work in connection with their business themselves. Their trucks bore no signs indicating that they were used in any business comprising the transportation of freight. They collected no freight between Seattle and Everett. They carried no passengers. They used no advertising medium. They had no uniform bills of lading.

As was stated by this court in the case of *Cushing v. White, supra,* such cases as this—

" . . . must be determined by the character of the business actually carried on by the carrier and not by any secret intention or mental reservation it may entertain or assert when charged with the duties and obligations which the law imposes."

This court, in determining the issues presented by the case last cited, assumed that the statute applicable to such a situation as was then before it applied only to common carriers of passengers, although the statute in force at that time did not specifically mention common carriers.

Appellant seeks to distinguish the facts now before us from those presented in the case of *Independent Truck Co. v. Wright,* 151 Wash. 372, 275 Pac. 726, in which it was held that the defendants were carrying on their business in violation of the motor vehicle transportation act. We have examined the record in the case at bar with care and have diligently weighed the argument of respondents' counsel. We are satisfied that, while the business conducted by respondents is not as extensive as that which was held in the case last

cited to have been conducted in violation of the statute, the difference is in degree rather than in kind. Respondents did regular hauling for from twenty to twenty-five patrons. They did incidental hauling for many other persons. They carried merchandise of every kind and description, making deliveries generally as directed by their patrons. It does not appear that they had any appreciable number of exclusive transportation contracts, but it seems that their customers shipped indiscriminately by respondents' trucks or by other transportation companies, as happened to be convenient.

Respondents rely upon the case of *Big Bend Auto Freight v. Ogers,* 148 Wash. 521, 269 Pac. 802, in which it was held that Mr. Ogers, who was transporting the products of a large flour mill at Davenport to Spokane, was not a common carrier. Mr. Ogers operated two trucks and his hauling for the flour mill was done under a special independent contract. He occasionally, on the return trip from Spokane, brought a few articles back to Davenport for persons other than the milling company. This incidental hauling was purely casual, covering only emergency matters, and, in quantity, was practically negligible. Mr. Ogers' contract with the milling company, regardless of the nature or extent of his operations thereunder, clearly would not make him a common carrier. The court held that, in view of all the circumstances of the case and the evident good faith of Mr. Ogers, the incidental hauling which he did for other persons was not of such character or amount as to make him a common carrier. The court said:

"We do not want to be understood, however, as sanctioning the acceptance of freight from the public generally, however small, by private carriers while they may be operating under private contracts."

In the case last cited, the private contract was clearly proven and was manifestly entered into and carried on by the parties in entire good faith and without any intention to circumvent the auto transportation statute. The incidental hauling was insignificant in amount, and appears to have been generally performed more as an accommodation than as a matter of business.

We deem the facts in the case at bar more nearly analogous to those of the case of *Independent Truck Co. v. Wright, supra,* than to those upon which the decision in the case of *Big Bend Auto Freight Co. v. Ogers* was based.

We are constrained to hold that the business conducted by respondents falls within the rule laid down in the case of *Independent Truck Co. v. Wright, supra,* and is in all essential particulars that of a common carrier.

The judgment of the superior court is reversed, with instructions to enter a decree, in accordance with the prayer of appellant's petition, enjoining respondents from continuing the operation of their present business.

MITCHELL, C. J., PARKER, TOLMAN, and MILLARD, JJ., concur.